IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                          **PLAINTIFF**

**V.**                  **CASE NO. 5:18-CR-50042-TLB-1**

**STEPHEN RAY WILSON JR.**                          **DEFENDANT**

**OPINION AND ORDER**

Currently before the Court is Defendant Stephen Ray Wilson Jr.'s *pro se* Emergency Motion for Compassionate Release (Doc. 33). The Court directed the Government to file a response, and the Government did so. *See* Doc. 35. Mr. Wilson filed a Reply (Doc. 36). Now that the Motion is ripe, and having reviewed all of these filings, the Court finds that Mr. Wilson's Motion should be **DENIED** for the reasons explained below.

**I. BACKGROUND**

On January 10, 2019, Mr. Wilson was sentenced after pleading guilty to one count of distributing a controlled substance, namely more than 50 grams of actual methamphetamine. The Court sentenced Mr. Wilson to a 188-month term of imprisonment, a 5-year term of supervised release, a $3,900 fine, and a $100 special assessment. (Doc. 56). This sentence was at the bottom of Mr. Wilson's Guideline range, which was calculated based on the significant quantity of actual methamphetamine (941.8 grams) for which he was held responsible. *See* Doc. 26, ¶ 26.

Mr. Wilson is currently incarcerated at FCI Talladega with a projected release date of June 16, 2032. *See* Fed. Bureau of Prisons, Inmates, https://www.bop.gov/inmateloc/ (last accessed May 19, 2021). He has served approximately 36 months of his

1

original sentence but now moves for compassionate release under 18 U.S.C. § 3582(c)(1) due to his asthma, hypertension, Hepatitis C, and obesity on the grounds that he is at a higher risk of a severe infection of COVID-19. He also seeks appointment of counsel to assist him with his request for compassionate release. Mr. Wilson's medical records show that he is 41 years old and that he does indeed have asthma, Hepatitis C, and is obese. (Doc. 33-1, p. 38). His medical records also indicate that he previously tested positive for COVID-19 in October 2020. See Doc. 35-3, p. 9.

## II. LEGAL STANDARD

The First Step Act of 2018 ("FSA") permits an inmate to seek a sentence reduction directly from the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). If one of these threshold requirements is satisfied, the court may grant a defendant's motion for a reduction in sentence "after considering factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Thus, the Court looks to the Sentencing Commission's policy statement in the United States Sentencing Guidelines ("USSG") as a starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). Application Note 1(A)(ii)(I) of USSG § 1B1.13 indicates that the medical condition of the defendant may provide extraordinary and compelling reasons if the defendant is "suffering from a serious

2

physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Although the Sentencing Commission has not updated nor adopted a new policy statement since the FSA was enacted, the policy statement nonetheless provides guidance as to what constitutes extraordinary and compelling reasons for the purposes of 18 U.S.C. § 3582(c)(1)(A). *See, e.g., United States v. Schmitt*, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020).

### III. DISCUSSION

#### A. Exhaustion of Remedies

The Court's ability to rule on Mr. Wilson's Motion is dependent on whether he: (1) fully exhausted his administrative right to appeal the BOP's failure to bring a motion for early release or (2) allowed 30 days to lapse since the warden received his request for early release, whichever event is sooner. 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Wilson presents proof that he requested compassionate release from his warden on November 24, 2020. (Doc. 33-1, p. 2). The Government concedes that Mr. Wilson has exhausted his administrative remedies. Therefore, since Mr. Wilson petitioned his warden for early release on November 24 and because more than 30 days have lapsed since then, the Court finds that Mr. Wilson has satisfied the exhaustion requirement set forth at 18 U.S.C. § 3582(c)(1)(A)(i).

#### B. Extraordinary and Compelling Circumstances

Since Mr. Wilson has already recovered from a COVID-19 infection, his argument for compassionate release relies upon his ongoing risk of reinfection with COVID-19 and the alleged deterioration of his physical condition following his COVID-19 infection.

Unfortunately, there is little evidence to support either of these contentions. As to Mr. Wilson's risk of reinfection, that risk is speculative. The Centers for Disease Control and Prevention ("CDC") website states that "[c]ases of reinfection with COVID-19 have been reported, but remain rare." Ctrs. for Disease Control and Prevention, Reinfection with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last accessed May 19, 2021). In short, there is little basis for the Court to conclude that Mr. Wilson faces any risk of reinfection.[1] Other courts have agreed that the risk of COVID-19 reinfection does not, by itself, qualify as an extraordinary and compelling reason justifying compassionate release. *United States v. Molley*, 2020 WL 3498482, at *2-3 (W.D. Wash. June 29, 2020) ("That possibility [of reinfection] is not the same as the concrete and serious threat that infection poses to at-risk inmates, and it is not an extraordinary and compelling reason to release Molley from prison."); *but see United States v. Hanson*, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) (noting that a prior infection of COVID-19 may not necessarily confer immunity). In the Court's view, at this time, the risk to Mr. Wilson posed by a potential reinfection is too speculative to constitute an extraordinary and compelling reason for compassionate release.[2]

Furthermore, the Court concludes that Mr. Wilson has failed to demonstrate that his medical conditions have deteriorated to the point that he is unable to provide self-care

---

[1] According to the BOP's COVID-19 tracking website, as of May 19, 2021, no one in FCI Talladega has an active case of COVID-19. Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed May 19, 2021).

[2] The Court's decision on this score is based upon the present scientific uncertainty regarding the risks of reinfection. Should that uncertainty be resolved and the risk become more apparent, the Court may reevaluate whether that risk constitutes an extraordinary and compelling reason to release inmates from prison.

4

within his correctional facility. The Court is convinced that Mr. Wilson suffers from asthma, hypertension, Hepatitis C, and obesity. Moreover, his medical records indicate that he also endures ongoing dental issues. Still, the medical records also show that he has received ongoing treatment for all of these issues, and there is no indication that his conditions independently rise to the level of an extraordinary and compelling basis for a reduction of his sentence.

### C. Section 3553(a) Factors

Even if Mr. Wilson were able to demonstrate extraordinary and compelling reasons for his release, he is not a suitable candidate for early release considering the Section 3553(a) factors. Section 3582(c)(1) requires the court to consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for compassionate release. The circumstances of this case include the fact that Mr. Wilson was originally sentenced to 188 months' imprisonment, which was at the bottom of his Guideline range. This sentence could very well have been higher, given that Mr. Wilson has an extensive criminal history that corresponded to a total criminal history score of 33. Further, counting from the date of his original arrest, it appears that Mr. Wilson has now served approximately 19% (36 months) of his original 188-month sentence of imprisonment. In the Court's view, this amount of time is insufficient to reflect the seriousness of his offense conduct, to promote respect for the law, and to afford adequate deterrence to those who would seek to engage in similar criminal activities. Additionally, allowing Mr. Wilson to complete his prison sentence in 36 months would create a significant disparity with other defendants who have been held responsible for similarly large quantities of methamphetamine. In sum, after considering and weighing all of the Section 3553(a)

5

factors, the Court continues to find that a sentence of 188 months is just and fair under the totality of the circumstances.

For these reasons, even assuming Mr. Wilson has demonstrated extraordinary and compelling medical reasons justifying a reduction of his sentence, the Court finds that the Section 3553(a) factors do not justify compassionate release of Mr. Wilson.[3]

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Stephen Ray Wilson Jr.'s *pro se* Emergency Motion for Compassionate Release (Doc. 33) is **DENIED**.

**IT IS SO ORDERED** on this 20th day of May, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[3] To the extent Mr. Wilson asks to serve the remainder of his sentence in home confinement, the FSA gives only the BOP—not the Court—the power to decide where Mr. Wilson serves his sentence. *See* 18 U.S.C. §§ 3624(c)(4), 3621(b).